

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. **Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.**

**1. Personal Information**

Last Name: Flores First Name: Sylvia MI: Elaine

Street or Mailing Address: 3234 Glenwood Street Apt Or Unit #:

City: Highland County: Lake State: IN ZIP: 46322

Phone Numbers: Home: ( 219 ) 3598174 Work: ( 219 ) 3598174

Cell: ( 219 ) 3598174 Email Address: floressylvia2@gmail.com

Date of Birth: 01/11/1975 Sex: Male ☐ Female ☑ Do You Have a Disability? ☑ Yes ☐ No

**Please answer each of the next three questions.** i. Are you Hispanic or Latino? ☑ Yes ☐ No

ii. What is your Race? Please choose all that apply. ☐ American Indian or Alaska Native ☐ Asian ☑ White
☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)?

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Heriberto Arreguin Relationship: fiance

Address: 3234 Glenwood Street City: Highland State: IN Zip Code: 46322

Home Phone: ( 219 ) 9027597 Other Phone: ( 219 ) 9027597

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☑ Employer ☐ Union ☐ Employment Agency ☐ Other (Please Specify)

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

**Organization Name:** Family Christian Center

Address: 340 West 45th Street County: Lake

City: Munster State: IN Zip: 46321 Phone: ( 219 ) 9226500

Type of Business: Church Job Location if different from Org. Address:

Human Resources Director or Owner Name: Pastor Owens Phone: (219)9226500

**Number of Employees in the Organization at All Locations:** Please Check (√) One

☐ Fewer Than 15 ☑ 15 - 100 ☐ 101 - 200 ☐ 201 - 500 ☐ More than 500

**3. Your Employment Data** (Complete as many items as you can) **Are you a Federal Employee?** ☐ Yes ☑ No

Date Hired: 12/15/2014 Job Title At Hire: Maintanence

Pay Rate When Hired: $10 hrly Last or Current Pay Rate: $10hrly

Job Title at Time of Alleged Discrimination: Maintanence Date Quit/Discharged: 07/19/2018

Name and Title of Immediate Supervisor: Edgar Espino

Sylvia E. Flores

USDC INND case 3:20-cv-00394-JTM-JEM   document 1   filed 11/03/20   page 2 of 23

**4.  What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race   ☒ Sex   ☐ Age   ☑ Disability   ☐ National Origin   ☐ Religion   ☐ Retaliation   ☐ Pregnancy   ☐ Color (typically a difference in skin shade within the same race)   ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing   ☐ ii. family medical history   ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

Other reason (basis) for discrimination (Explain). _____

**5.  What happened to you that you believe was discriminatory?**  Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you.  **Please attach additional pages if needed.**
*(Example: 10/02/06  - Discharged by Mr. John Soto, Production Supervisor)*

A)  Date: 07/19/18          Action:  Terminated by Edgar Espino, Department Manager
                                     Please see attached paper

Name and Title of Person(s) Responsible:  Edgar E. department manager

B)  Date: 06/19/18          Action:  disiplinary action (written up)
                                     please see attached paper

Name and Title of Person(s) Responsible:  Edgar E department manager

**6.  Why do you believe these actions were discriminatory? Please attach additional pages if needed.**

Edgar made multiple complaints about me to James Williams who was Edgars manager. Edgar complained about how I wasnt pulling my weight in the department, how my work hours were cut, as well as duties. He asked on several occasions that I be replaced. James explained to Edgar (James assistant)
and Valerie (another assisant) that if I was to be terminated that it would be discrimation being that I have doctors notes to cover my illness and what taskI can do. Edgar took over and I was constantly being harrassed and or written up. When I was pulled in to the office Edgar began to tell me why he had a problem with what they were doing and that it will continue unless I was the only one being **PLEASE SEE ATTCHED PAPER**

**7.  What reason(s) were given to you for the acts you consider discriminatory?  By whom? This or Her Job Title?**

Edgar department manager said I am being terminated because he can no longer work with my illness, disability, and doctors notes. He also stated that I am not working out because he needs a guy for more manpower.

**8. Describe who was in the same or similar situation as you and how they were treated.  For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance?  Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination.  For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on.  Use additional sheets if needed.**

**Of the persons in the same or similar situation as you, who was treated *better* than you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Luz Aleman | Hispanic female | maintenance |

Description of Treatment   Edgar complained about her being on her cell phone while working and about her work perforamance. She was late quite often and Edgar never wrote her up.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Corey | Black male | maintenance |

Description of Treatment   Edgar always complained about the work Corey did and how sloppy and lazy he was. Edgar sent me in to clean up after Corey several times. Edgar said he was tired of having to tell him how to do his job. Edgar never wrote him up

Sylvia E. Flores

**Of the persons in the same or similar situation as you, who was treated *worse* than you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Reginald Jones | Black male | Maintenance |

Description of Treatment Edgar made it well known that he did not like Regie having conversations with radom people and how long his conversations were. Edgar aslo complained how Regie somtimes took long to complete a task. He never got written up.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Rao | Hispanic male | maintenace |

Description of Treatment Edgar complained how Rao would leave andgo elsewhere and not let anyone no his where abouts. Edgar also complained how Rao was on his phone during company time. He was never written up.

**Of the persons in the same or similar situation as you, who was treated *same* as you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
|  |  |  |

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
|  |  |  |

Description of Treatment

**Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.**

9. **Please check all that apply:**

☑ Yes, I have a disability

☐ I do not have a disability now but I did have one

☐ No disability but the organization treats me as if I am disabled

10. **What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything?** (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

Migraines
Hormonal imbalance
Fibromyalgia

11. **Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**

**Yes** ☑ **No** ☐

If "Yes," what medication, medical equipment or other assistance do you use?

Butalb Acetamin-Caff 50-325-40 mg 2x daily          Hydrocodone Acetamin 7.5-325 1 tablet every 4 hours
Levothyroxine 175mg 1x daily
Tramadol HCL 50mg every 4 Hours

12. **Did you ask your employer for any changes or assistance to do your job because of your disability?**

**Yes** ☑ **No** ☐

If "YES", when did you ask? ~~March 2018~~          How did you ask (verbally or in writing)? ~~Verbal~~

Who did you ask? (Provide full name and job title of person)

Edgar E. maager
Valarie B. his assistant

Describe the changes or assistance that you asked for:

I asked if I can go back to began working 10-4 NOT 8-2. I explained to both of them the amount of medication I was taking had been increased and it was easier for me to work later. And it was getting difficult to drive early with the amount of medication I was taking. The days i was scheduled to work and the amount of hours I was working remained the same.

How did your employer respond to your request?

Edgar did did not like the fact that I asked to start at a different time being that he was going tout of his way for my illness. Valerie said she could not make that adjustment nor could she bring it to Edgars attentions because she had nothing to do with it even though she was left to take over the department and schedules when Edgar was off or left the building. She is the person is charge and who we report to when he is unavailable.

Sylvia E. Flores

**13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| A. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| Valerie Buchanan | assistant manager | 340 West 45th street<br>Munster IN 46321 |

**What do you believe this person will tell us?**

She was in the office when Edgar terminated me disclosed confidential informtaion about other employees.

| B. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| | | |

**What do you believe this person will tell us?**

**14. Have you filed a charge previously in this matter with EEOC or another agency?**   Yes ☐   No ☑

**15. If you have filed a complaint with another agency, provide name of agency and date of filing:**

**16. Have you sought help about this situation from a union, an attorney, or any other source?**   Yes ☐   No ☑
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

**Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.** If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. **If you do not file a charge of discrimination within the time limits, you will lose your rights.** If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

| Box 1 | ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. **I also understand that I could lose my rights if I do not file a charge in time.** |
|---|---|
| Box 2 | ☑ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the **EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.** I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination. |

┌─────────────────────────┐
│ Verified by PDFfiller   │
│ 12/14/2018              │
└─────────────────────────┘

_Sylvia J Flores_ (signature)

**Signature**

12/14/2018

**Today's Date**

**PRIVACY ACT STATEMENT:** This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1. **FORM NUMBER/TITLE/DATE.** EEOC Intake Questionnaire (9/20/08).
2. **AUTHORITY.** 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. **PRINCIPAL PURPOSE.** The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. **ROUTINE USES.** EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters
5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.** Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

_Sylvia E. Flores_ (signature)

Family Christian Center Maintenance Team
340 West 45th Street
Munster IN 46323

# Probationary Period Notice

### For Sylvia Flores
#### Effective June 19, 2018

Sylvia,

Today we are notifying you formally, regarding your poor performance of your responsibilities and duties as an employee in the Maintenance Team. We are highlighting some of the issues on the second page of this notice.

This continued misconduct is grounds for termination of your employment with Family Christian Center. However, we would like to give you one last opportunity to prove your value to our company and are placing you on probation for 15 days effective immediately. In the event, there is a continuation of your poor performance, we shall terminate your employment without further notice.

This probationary period is designed to provide you an opportunity to prove to us, our confidence in you, is well justified. We hope you use this opportunity to your advantage.


Edgar Espino
Maintenance Team Leader

Pastor Terry W. Owens
Chief Financial Officer

Page 1 of 2

Sylvia E. Flores

Family Christian Center Maintenance Team
340 West 45th Street
Munster IN 46323


Issue #1:  Time Management
Your current schedule is: (subject to change, per Edgar)
> Monday 10am to 4pm
> Tuesday 10am to 4pm
> Thursday 10 to 4pm
> Saturday 12 to 8pm

- You are required to clock-in no earlier than 9:50am (or 11:50am, Sat) and absolutely, no later than 10:01am (or 12:01pm, Sat.).  You must clock-out no later than 4:01pm (or 8:01pm, Sat.) unless you are told by Edgar you may stay on the clock until your assignment is finished for that day.   You cannot make the decision to extend your work day longer on your own.
- If you realize you will not finish your assigned task in the time allotted for the day, you will verbally tell your leader before the end of your shift.
- Work the tasks assigned and do not hold exceptionally long conversions during any work period.
- There will be no tardiness for your schedule at any time during this probationary period. We highly suggest you plan to arrive on-site well before your check-in time.
- There will be no call-offs without a physician's statement as to a medical reason upon the next work day's return to work during this probationary period.


Issue #2:  Product Missing from Building
At no time are any product purchased and owned by FCC to be removed from this building w/o prior knowledge of Edgar.


Issue #3:  Communication Failure
You will bring conflicts of your employment to your leader immediately.  The leader should not be told by coworkers of your inability to report to work on-time because you cannot wake up on-time daily.


Issue #4:  Personal Financial Issues
Your personal finances are not a reasonable excuse to miss work hours.  Your leader can and will assist in securing a full and correct paycheck for you but once the check is in your procession, you are to conduct your financial business (including how your bank processes transactions) during your off-work hours.




The proceeding issues listed are just the latest of several over the last few months and are by no means complete.  A copy of this document will be contained in your employee personnel file.

Sylvia E. Flora

From: **floressylvia2** floressylvia2@gmail.com
Subject: **Fwd: EEOC**
Date: **Dec 14, 2018 at 11:39:06 PM**
To: betoarre@sbcglobal.net

Sent from my T-Mobile 4G LTE Device

-------- Original message --------
From: james williams <jamesawjr@sbcglobal.net>
Date: 12/12/18 7:17 PM (GMT-06:00)
To: floressylvia2@gmail.com
Subject: EEOC

To the EEOC,

Hello my name is James A Williams Jr (Jamie) and i was the director of Operations for Family Christian Center from June 2007 until my resignation February 2018.  During that time Sylvia Flores was hired by me and worked under my umbrella of leadership for many years.  During Sylvia's time there she had a few health issues in which she was under a physicians care along with multiple surgeries.

The health issues limited her ability to perform her originally agreed work load and schedule however being that she was under a doctors care we (FCC) tried to be as accommodating as possible but there was much frustration being voiced by

*Sylvia E. Flores*

her coworkers and her shift supervisors.  As soon as these individuals voiced their frustration i explained to them our position as an organization and also state and federal workforce guidelines and explained that we would be making necessary adjustments on her behalf.  Her shift supervisors Edgar Espino and Valerie Buchanan respected my ruling and reluctantly submitted.

When i submitted my resignation on February 12 2018 Sylvia was still employed in good standing but still under physicians order for light duty and reduced hours.  FCC is a high paced and often times last minute type structure so it can be challenging for individuals with limitations in that environment therefore i was concerned when i departed she would not have the same understanding.

 I have had no conversation about Sylvia's termination with either Edgar Espino or Valerie Buchanan however Sylvia has given me her recollection of the event.  Based on my conversation with Sylvia and due to the fashion in which she claims she was terminated i informed the CFO for FCC Pastor Terry Owens of the reason she said she was given and the particular words used to express it. I went on to express my concern for legal ramifications not to mention the optics of the termination.

Sylvia E. Flores

This is the extent of my involvement however if you have any further questions or need more detail on what i have explained in this correspondence please feel free to contact me at (219)308-1829

James A Williams Jr

Sylvia E. Flores

# EMPLOYEE WARNING NOTICE

| EMPLOYEE Sylvia Flores | | WARNING DATE 8/17/15 |
|---|---|---|
| LOYEE NO. | DEPARTMENT Maintenance | SHIFT Days |

## VIOLATIONS

- [X] ATTENDANCE
- [ ] CARELESSNESS
- [X] CONDUCT
- [ ] INSUBORDINATION
- [ ] PERSONAL WORK
- [ ] REFUSAL TO WORK OVERTIME
- [ ] SAFETY
- [X] TARDINESS
- [X] UNAUTHORIZED ABSENCE
- [ ] WORK QUALITY
- [ ] WILLFUL DAMAGE TO COMPANY PROPERTY
- [ ] OTHER_____

## WARNINGS PREVIOUSLY

| WARNING # | DATE | ORAL | WRITTEN | SIGNED |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |

## COMPANY STATEMENT

Simple Communication Is Expected And Required. If You Dont Know Something You Ask - You Dont ASSUME.

SIGNED [signature]

TITLE Director of Operations   DATE 9/2/15

## EMPLOYEE STATEMENT

- [ ] I agree with Company Statement.
- [ ] I disagree with Company Statement.

REASONS_____

SIGNED_____   DATE / /

## ACTION TAKEN

Written Infraction Added To File And Warned Of Consequences If This Happens Again.

I have read this Warning Notice and understand it

EMPLOYEE'S SIGNATURE Sylvia E Flores   DATE 9/2/2015

SUPERVISOR_____   DATE_____

- [ ] This form was refused by Employee

SUPERVISOR_____   DATE_____

* If the Employee Warning Notice, after completion, contains information on the medical condition or history of an employee, the it must be maintained in a separate medical file and treated as confidential in accordance with applicable law and regulations.

Adams
9060

# EMPLOYEE WARNING NOTICE

On Monday, August 17, 2015, Sylvia did not report to work at 8 a.m. A text was sent to her by Valerie (her department leader), inquiring as to what time she was coming into work. Since Sylvia did not reply to the text, a call was made and a voice message was left for her to call as soon as she received the message. Edgar (senior department leader) was made aware that she hadn't shown for work and he also texted her with no reply.

The same day at 11:00 a.m., Sylvia texted "A schedule wasn't posted or sent to me so I didn't know to come in".

It is understood that if a schedule is not posted for an up- coming week, Monday's hours will be 8 a.m. to 4 p.m. In the event that Sylvia had no knowledge of this, she had the options; to ask Jamie, Edgar, Valerie, a co-worker or just show up for work.

Sylvia chose not to report to work and by doing so demonstrated a lack responsibility and respect to her employer. Sylvia is aware that if she going to be late or absent from work she is to contact Valerie.

On August 17, Valerie called and text me back to back. Then Edgar called me. I responded to Valarie and ~~text~~ txt that I wasn't told to come in meaning that there wasn't a schedule nor was their any verbal communications for me to come in as it has always been done in the past. Either a schedule is put out, a txt has been sent or I've been verbally told to come in.

Sylvia E Flores
9/2/2015



### U.S. Equal Employment Opportunity Commission
### Indianapolis District Office

101 West Ohio St
Suite 1900
Indianapolis, IN 46204
(317) 226-7212
TTY (317) 226-5162
Fax: (317) 226-7953

Respondent: FAMILY CHRISTIAN CENTER
EEOC Charge No.: 470-2019-00978
FEPA Charge No.:

December 19, 2018

Sylvia Flores
3234 Glenwood Street
Highland, IN 46322

Dear Ms. Flores:

This is with reference to your recent written correspondence or intake questionnaire in which you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to the statute(s) checked off below:

[ X ]    Title VII of the Civil Rights Act of 1964 (Title VII)

[ ]      The Age Discrimination in Employment Act (ADEA)

[ X ]    The Americans with Disabilities Act (ADA)

[ ]      The Equal Pay Act (EPA)

[ ]      The Genetic Information Nondiscrimination Act (GINA)

The attached EEOC Form 5, Charge of Discrimination, is a summary of your claims based on the information you provided. Because the document that you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge. Before we investigate your charge, however, you must sign and return the enclosed Form.

To enable proper handling of this action by the Commission you should:

(1)   Review the enclosed charge form and make corrections.

(2)   Sign and date the charge in the bottom left hand block where I have made an "X". For purposes of meeting the deadline for filing a charge, the date of your original signed document will be retained as the original filling date.

(3)   Return the signed charge to this office.

Before we initiate an investigation, we must receive your signed Charge of Discrimination (EEOC Form 5). Please sign and return the charge within thirty (30) days from the date of this letter. Under EEOC procedures, if we do not hear from you within 30 days or receive your signed charge within 30 days, we are authorized to dismiss your charge and issue you a right to sue letter allowing you to pursue the matter in federal court. Please be aware that after we receive your signed Form 5, the EEOC will send a copy of the charge to Indiana Civil Rights Commission 100 North Senate Avenue Suite North 300 Indianapolis, IN 46204 as required by our procedures. If that agency processes the charge, it may require the charge to be signed before a notary public or an agency official. The agency will then investigate and resolve the charge under their statute.

Please use the "EEOC Charge No." listed at the top of this letter whenever you call us about this charge. Please also notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Please also read the enclosed brochure, "What You Should Know Before You File A Charge With EEOC," for answers to frequently asked questions about employee rights and the EEOC process.  If you have any questions, please call me at the number listed below. If you have to call long distance, please call collect.

Sincerely,

Robin McKay
Investigator
(317) 226-6635

Office Hours: Monday -- Friday, 8:00 a.m. - 4:30 p.m.
www.eeoc.gov

Enclosure(s)
   Copy of EEOC Form 5, Charge of Discrimination
   Copy of EEOC Uniform Brochure, "What You Should Know Before You File A Charge With EEOC."

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Indianapolis District Office**

101 West Ohio Street, Suite 1900
Indianapolis, IN 46204-4203
(317) 226-7212
TTY (317) 226-5162
FAX (317) 226-7953 & 5571

October 29, 2019

***Via U.S. Mail & E-mail to: floressylvia2@gmail.com***
Sylvia Flores
3234 Glenwood St.
Highland, IN 46322

      RE:    Sylvia Flores v. Family Christian Center
              Charge No. 470-2019-00978

Dear Ms. Flores:

Please find attached the Respondent's position statement in response to your charge of discrimination. ***By accepting these documents, you agree that you will only share the contents with persons in a privileged relationship, such as a spouse, clergy, or legal, medical, or financial advisor.***

Once the Respondent provides a non-discriminatory reasons for its employment decisions, the burden of proof rests with you to show that the stated reasons are either untrue or that others of a different class (for example, race, sex, or national origin) were treated more favorably under similar circumstances. This is your opportunity to provide information to rebut the Respondent's defense. If you have information which may lead to evidence to overcome the Respondent's defense, or if you would like to propose a settlement, please contact me no later than **12:00 p.m. on November 18, 2019.** You may also e-mail the information to me at robin.mckay@eeoc.gov. If you do not have access to e-mail you may send a letter to my attention at the above address. I can be reached between 8:00 a.m. and 4:30 p.m. Monday through Friday at (317) 226-6635. If you leave a message, please include a telephone number where you may be contacted during those hours.

If you do not provide rebuttal information by **noon on November 18, 2019,** or if the rebuttal information you submit does not overcome the Respondent's defense your charge will be forwarded for supervisory review and a determination will be made based on the available information. If your charge is dismissed, you will be issued a Dismissal and Notice of Rights which will allow you to file a private lawsuit within ninety (90) days of receipt of the notice.

Sincerely,

Robin McKay
Federal Investigator

Enclosure: Position Statement for 470-2019-00978

# ROY DOMINGUEZ
## ATTORNEY AT LAW

7895 Broadway, Suite #R
Merrillville, IN 46410
Phone: 219-769-6213
Fax: 219-769-7993
Roy@dominguezlawyer.com

September 20, 2019

Robin McKay, Federal Investigator
U.S. EEOC
101 West Ohio St., Suite 1900
Indianapolis, Indiana 46204

Re:           Sylvia Flores v. FCC
Charge No:    470-2019-00978
My Client:    FCC

Dear Investigator McKay,

On behalf of my client, we categorically deny that Ms. Flores was discriminated upon any basis.
She is correct that she was hired by FCC and on December, 2014, she commenced her employment and her physical disabilities were present.

Maintenance duties on December 2019;
1. Day Shifts;
2. Cleaning the restrooms;
3. Cleaning mirrors;
4. Vacuum and/or mop carpets, hallways and offices;
5. Dust and wipe table, desk handrails;
6. Duties were always assigned based upon her disabilities and every accommodation was considered.

My client and staff members have always been supportive of Ms. Flores. In fact, she had several verbal reprimands because she refused to do any work and only wanted to visit/talk with other staff members.

She was told to stay at work assignments that she was doing for years, but she kept on disturbing other workers. Thus her job assignments and other staff members were not completed because of Ms. Flores' insistence to disregard instructions to do her job. On many occasions, she would call off without adequate notice to her immediate supervisor or at times to anyone else. The FCC staff would call her or text her to inquire if she was coming to work. Sometimes, Ms. Flores answered and at times no response. The FCC staff conducted several discussions with her about poor job performance and refusal to complete her job duties and to not disturb other employees. This was an ongoing employee insubordination for a long time. Mr. Espino never made any such statements as mentioned in her charging forms particulars. He is a very respectful person and never made such offensive remarks.

Ms. Flores' supervisor was Valerie Buchanan. In fact, her brother-in-law on different occasions was going to terminate Ms. Flores but she was given several opportunities to simply do her job. Ms. Flores never complained about her job assignments which were in place since she began approximately 4 years prior to this charge.

Lastly, on her termination meeting, for cause, both Ms. Valerie Buchanan and Mr. Espino were present and advised her that she was no longer employed at FCC.

If you have any further questions, please do not hesitate to contact me.

Sincerely,

Attorney Roy Dominguez

As of Saturday, July 7, 2018, the weekly work schedule for the week of July 9, 2018 was not yet made available for employees in my department. On that Monday, I texted Edgar and inquired about my schedule. I received a reply at 3:19 pm from him stating, "…u are off until next Saturday." The following Sunday, July 15, 2018, I went back into the office seeking my work schedule. When none was posted, I checked our other scheduling service, Group Me, an app that employees downloaded on their device to keep communication open. On Monday, July 16, 2018, after I still had not heard from any leadership, I personally called Edgar and asked about my weekly schedule. I told him that I check both the office and the text app looking for the information I needed. Though I was given the July 21st date as my return day, I was not given a time slot nor could one be found on paper.

Edgar informed me on that phone call that I was fired because I had been scheduled but I didn't show or call. I inquired how that was possible when the last known work day for me was the Saturday mentioned in his text, July 21, 2019. As stated before, there was no written schedule anywhere. He said he was too busy to talk and would return my call. Later that evening, Valerie called and asked me if I wanted a meeting to discuss the matter. I said, "of course." She scheduled it for Thursday, July 19, 2018 at 4pm.

In the meeting, Edgar again stated that I, "did a no call no show." He also stated that I failed to attend "meetings" (no further explanation as to what meetings) and then questioned my church attendance and socialization with fellow church members (none of which affected my job or schedule). He said he tried to work with me many times and gave me many chances and by writing me up and putting me on probations, he thought that would help me to rethink if I wanted to continue working for the church. He stated that it didn't make sense to keep writing me up or give me verbal warnings over and over because he wasn't Jamie (our former manager).

I showed him the text message he sent me that stated not to return to work until next Saturday; which was July 21st.  He disagreed and said I was wrong. He said next Saturday was July 14th but I asked him to please let me finish. I showed him the text and asked him to look at the calendar.  I also showed Valarie the text and she told Edgar he was incorrect and I was right.

Edgar then told me that he could no longer work with either my disability or my scheduling restrictions. He said he needed a male to work with because he needed "man power". I asked again, why I was being terminated. He repeated himself. "I cannot work with your disability or your scheduling issues, and I need a guy who can give me manpower." He proceeded to say, I wasn't fire. So I asked him

if I could expect to be on the schedule if I wasn't fired. He said that I wouldn't be on the schedule. So I repeated what he said. I asked him point blank in front of Valerie. I asked "are you firing me because of my disabilities and because you need a guy for manpower?" He said, "Yes." Again, Valerie was also in the room when he made those statements.

There was an existing issue with Edgar prior to my old manager, Jamie Williams' exit. It was known that Edgar and Valerie were frustrated with my limitations and asked Jamie to fire me. Jamie informed both Edgar and Valerie that it was illegal to terminate me within the confines of my doctor ordered limitations as long as I was working within the guidelines given by the doctor. And I was. Both Valerie and Luz complained that Edgar made sexist remarks toward the girls and treated us as no respect.  Edgar was also angry with me because I would not work in other locations outside of the church property at 340 W. 45th Avenue. FCC and Edgar asked me on multiple occasions to work at other locations owned by several church members. At first I always said yes for fear that I would lose my job. But when I inquired as to how workman's comp would apply if an injury happened on those off sites, Edgar told me I would have to say I was injured at the 340 W. 45th church location. Again, I wasn't trying to be difficult, I was just trying to stay protected.

In Edgar's discinplinary letter, he implied he received a schedule change (restriction) on my behalf from other employees. But the other "employee" in reference was Valerie, who was my direct supervisor. Due to the medication I was on, it was very difficult to get to work at 8am. I asked Valerie if we could change it to 10am. She stated, that I had to ask Edgar because she was not in charge (even though she was the supervisor). So I asked him directly, but by that time, he was upset that Valerie had also asked him. He reluctantly agreed. So why was it listed on his write up? And why was I ever written up at all? It was the only write up I had ever received from him. But I was fulfilling my daily duties.  I had been employed faithfully with FCC for more than 3 years by then. Though Mr. Dominguez states that I "refused to do any work", it was a total fabrication of the truth. I worked hard to perform my duties to the best of my ability for all of those years. There is no proof that I was a poor performer, especially during the previous years prior to Edgar's leadership.

In spite of all of this, FCC made it very difficult to fulfill their need for extended work hours. For example, on that last Saturday I worked,  July 7, 2018, the church was filled with an external odor that crippled my disabilities. A portion of the church's roof had collapsed and the church was dealing with a known mold issue. The building reeked of the smell. I worked nearly six hours in those conditions until

I was overcome with sickness. Edgar was very frustrated with me when I asked to leave early.

To make matters worse, at this time, FCC was also shorting my paychecks. Also I was not always receiving paystubs. On top of the other factors, 6 times alone in 2018 instead of receiving the ADP issued paystubs, FCC issued in-house checks from their accounting offices. The hours and taxes were not included and left me uncertain as to whether my checks were correct. This had been an ongoing issue that began a couple of years before and left me vulnerable. There were countless times our checks bounced and sometimes we were asked not to cash our checks until "notified". I was also told that it was expected that I would work mandatory unpaid or "volunteer" extra time despite the restrictions given by my doctor.

I am attaching all of the text messages between Edgar and I from May to July (regarding work for FCC at 340 W. 45th Street, Munster). Please note that I communicated extensively between Edgar and Valerie to ensure that he understood what was completed by me and I understood what they needed me to do from day to day.

EEOC Form 161 (11/16)    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Sylvia Flores** | From: | **Indianapolis District Office** |
|---|---|---|---|
| | **3234 Glenwood Street** | | **101 West Ohio Street** |
| | **Highland, IN 46322** | | **Suite 1900** |
| | | | **Indianapolis, IN 46204** |

|  | *On behalf of person(s) aggrieved whose identity is* |
|---|---|
| ☐ | *CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Michelle D. Ware,** | |
| **470-2019-00978** | **Enforcement Supervisor** | **(463) 999-1184** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u>** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit** may not be collectible.

On behalf of the Commission

**Michelle Eisele,**
**District Director**

AUG 1 1 2020
*(Date Mailed)*

Enclosures(s)

cc:    **Roy Dominguez**
**ROY DOMINGUEZ ATTORNEY AT LAW**
**7895 Broadway**
**Suite R**
**Merrillville, IN 46410**

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.